Ex parte María Sabá Lugo y Lugo, Petitioner and Appellant; Rosalía Ortiz et al., Respondents and Appellees.

No. 9008. Argued November 28, 1944.—Decided April 25, 1945.

*Raúl Matos* for appellant. *Erasto Arjona Siaca* for appellees.

OPINION OF MR. JUSTICE TODD, JR., in which MR. CHIEF JUSTICE TRAVIESO concurs.

In *Sosa* v. *Sosa,* decided April 10, 1945, *ante,* p. 732, the judgment rendered by the District Court of San Juan was affirmed, due to the fact that the four judges of this court were equally divided in opinion. In the opinion rendered by the undersigned judge in which Mr. Chief Justice Travieso concurred, we reached the conclusion that the adopted son has hereditary rights in the intestate succession of the adopter only in the place to which he is entitled without injuring the hereditary rights of the legitimate heirs who are forced heirs as well, that is, the legitimate children and descendants, the ascendants, the acknowledged natural children of the adopter, and without injuring the usufructuary quota of the widower.

In the case at bar there is involved the *intestate* succession of Enrique Alfonso Gordils Lugo composed of his mother and his widow, having also left an adopted daughter. The mother moved the lower court to declare her and the widow as sole and universal heirs of the deceased. The widow and the adopted daughter objected and the court after dismissing the mother's petition, declared as heirs the mother, the adopted daughter, and the widow, "the latter as to the usufructuary quota fixed by law, that is, a third of the estate left, which shall be taken out of the one-half of free disposal. The ascendant, mother of the deceased, shall be entitled to her legal portion of one-half of the inheritance.

"As to the adopted daughter, she shall receive the free portion which remains from the inheritance after fixing, as we have done, the quota of the widow and of the mother respectively, and the adopted daughter shall of course have two-thirds of it, and the remaining third in naked ownership while the surviving spouse enjoys the usufruct allotted to her. . ."

 Since, in our opinion, an adopted child is not a forced heir in the testate succession, neither is he a forced heir in the intestate succession.[1] For this reason, when construing the scope of § 133 of the Civil Code, we have placed the adopted child in the intestate succession after the legitimate heirs who are forced heirs, since that is the only way in which a certain portion may be allotted to them in the inheritance without prejudice to the rights of the former. The intestate succession is not governed by the disposition of the adopter expressed in the will and, therefore, he has to comply with the provisions of the Code which indicate who shall inherit, the order of succession, and the portion to which each is entitled. When the deceased leaves no children in the intestate succession the ascendants shall be the heirs, since § 898 of the Civil Code provides that "In default of lawful or *acknowledged illegitimate* issue and their issue, ancestors shall inherit from the decedent to the exclusion of collaterals."[2] When applying this Section one must take

---

[1] A forced heir is always a legitimate heir but not all the legitimate heirs have the statute of forced heirs. "Forced heirs are also called legal heirs (*legitimarios*)," 6 Manresa 230, and on page 241: "The legitime, *like the intestate succession*, has its origin in the law" and further ". . . . . legal heirs (*legitimarios*) are called to the succession exclusively by law, even against the will of the testator, for which reason the rules to succeed in the legitime must evidently be the same as those which govern the so-called legal or intestate succession." (Italics ours.)

[2] Although this question is not involved in this case, since there are no acknowledged legitimate children in this succession, we deem it advisable to copy a commentary set forth by Mr. Muñoz Morales on this Section in his Annotations to the Civil Code of Puerto Rico (p. 340), as follows:

"Beginning with Section 898, which is an exact copy of Section 909 of the Revised Code which substituted Section 935 of the Spanish Civil Code,

into account the provisions of § 763 to the effect that "Should the testator not leave any descendants, but only ascendants, the surviving spouse shall have a right to the third of the estate in usufruct," and according to § 761 its provisions "shall apply in like manner to the intestate as well as to the testate succession."

It follows, therefore, that by express provision of law, in

and which is in harmony with Section 894 of the preceding Article, we find the statement that ascendants succeed the deceased in default of legitimate or acknowledged illegitimate children and their descendants; that is, that illegitimate children, together with the legitimate ones, are in the first place, ahead of the ascendants and excluding the collaterals.

"This conclusion could be supported while Section 913 of the Code of 1902 was in force; but ever since the amendment of 1905 *a doubt* arises when Section 795 (now Section 736) was reformed, whereby the order in the testate succession was re-established by placing the natural children after the legitimate ascendants in the line of forced heirs; and when Section 15 of the same Act of 1905 re-establishing Section 841 of the Spanish Civil Code (now Section 768 of P. R.) fixes the right of acknowledged natural children appearing together with legitimate ascendants, by alloting a quota which shall be taken from the disposable portion.

"But *the doubt is dissipated* when the Act of 1911 by its Section 3 expressly repeals Section 913 of the Code of 1902 and in lieu thereof it reinstates in Article Second and in the intestate succession, the doctrine of Sections 939 to 945 of the Spanish Civil Code, now embodied in Section *902*, especially the fourth subdivision thereof, in connection with Section 768 of our Code in force.

"In view of those amendments and comparing them with Sections 768 and 902 of the present Code, a contradiction manifestly arises, and the provisions of Section *898* cannot be supported today in so far as they prescribe that the acknowledged illegitimate children are entitled to preference over the legitimate ascendants, the latter standing in a subordinate place with respect to the former.

"Let us now consider this contradiction: Section 898 states briefly that 'when there exist acknowledged illegitimate children and their descendants, the ascendants shall not inherit'. On the other hand, the fourth paragraph of Section 902 provides that 'when acknowledged natural children concur with legitimate descendants or ascendants they shall only inherit the portion fixed by Sections 767 and 768'.

"Since Section 902 contains an amendment which is *later* than the one embodied in Section 898, *the repeal of the latter in so far as it conflicts with the former* is manifest, and, consequently, it must be maintained that the rule of Section 935 of the Spanish Civil Code was impliedly left in force and that such was the intention of the Legislature of Puerto Rico when it enacted the Act of March 9 of 1911." (Italics ours.)

default of legitimate children, the mother of the deceased in the case at bar is entitled to be declared heir of his estate, allotting of course to the widow one-third thereof in usufruct. In view of this, the adopted daughter is not entitled to be declared intestate heir of the adopter.

The judgment rendered by the lower court must be reversed and another rendered instead declaring the appellant María Sabá Lugo and Lugo, mother of the deceased, and Rosalía Ortiz his widow, sole heirs of Enrique Alfonso Gordils and Lugo, in accordance with the terms of this opinion, with costs but without including attorney's fees.

Mr. Justice De Jesús and Mr. Justice Snyder agree with this conclusion on grounds which they will set forth in a concurring opinion.

CONCURRING OPINION OF MR. JUSTICE DE JESÚS, in which MR. JUSTICE SNYDER concurs.

The question to be decided in this appeal is whether an adopted daughter is entitled to share in the intestate succession of her adopted father when she concurs with the mother and the widow of the adopter.

In *Sosa* v. *Sosa, ante,* p. 732, decided April 10, 1945, the judges of this Court were equally divided as to whether adopted children, in concurrence with natural children only, had a share in the testate succession of their adoptive father. In the opinion rendered by Mr. Justice Todd, Jr., in which Mr. Chief Justice Travieso concurred, it was held that the adopted child was not a forced heir of the adopter and consequently was not entitled to share in the testate succession

of the latter when he had not been instituted heir. In the opinion rendered by Mr. Justice Snyder, in which I concurred, the conclusion was reached that the adopted child has the same rights and duties of a legitimate child in the family of the adopter, and since a legitimate child is entitled to share in the inheritance of his parents, it was held that an adopted child is a forced heir, subject, of course, to the condition provided by § 132 of the Civil Code (1930 ed.) to the effect that: "Adoption shall in no case injure the rights belonging to forced heirs, which shall remain *as though the adoption had not taken place.*" (Italics ours.)

In the present case Mr. Justice Todd, Jr., has rendered an opinion in which Mr. Chief Justice Travieso concurs, and consistent with his holding in *Sosa* v. *Sosa, supra,* he concludes that since an adopted child is not a forced heir, he is not entitled to share in the intestate inheritance of his adopter when the mother and the widow of the latter concur.

Even though I agree with the result of the opinion rendered by Mr. Justice Todd, Jr., I do not concur with the grounds on which it rests, merely because in my opinion an adopted child in our law is a forced heir *sui generis,* inasmuch as he can never prejudice the rights of the other forced heirs of the adopter. I shall not repeat here the reasoning of Mr. Justice Snyder in his opinion in *Sosa et al.* v. *Sosa et al., supra,* in order to show the status of forced heir that the adopted child has in relation with the adopter. I start from the premise, that the adopted child is a forced heir but always bearing in mind that the provision of § 132 which provides that the adoption shall not prejudice the rights of the forced heirs of the adopter, which rights shall remain as if the adoption had not taken place. Therefore, in order to determine which are the rights of the forced heirs that can not be injured by the adoption, let us suppose that the adoption has not taken place.

As prescribed by § 884 of the Civil Code, which deals with the intestate succession, the relative nearest in degree excludes the one more remote, except in cases in which the right of representation exists, and relatives in the same degree shall inherit in equal portions, subject to the provisions with respect to relationship by the whole blood. Commenting on § 921 of the Spanish Civil Code, identical to our § 884, Manresa says:

"The law calls upon the relatives to succeed and makes a distinction of classes and fixes a determinate order of priority to succeed. These orders are: 1st. descendants; 2d. ascendants; 3d. collaterals, subdivided into two: (a) brothers and sisters and their children; (b) the other collaterals within the sixth degree. According to the system established by law, the relatives belonging to the first order exclude those of the second and the second those of the third; thus, the ascendants are only called to inherit in default of the descendants; the collaterals only in default of the ascendants and the descendants; uncles or aunts and cousins only in default of brothers and sisters and their children.

"The order is, therefore, preferential to the degree and only in relation to each order may the first general rule of Section 921 be admitted." *Comentarios al Código Civil Español* (5th ed., 1924), vol. VII, p. 49.

In view of the fact that the deceased left no legitimate descendants or acknowledged natural children, or any other ascendant except his mother, the latter should be entitled to the whole of the inheritance, Civil Code § 898, after separating the usufructuary quota granted by law to the surviving spouse,[1] which quota amounts in this case to a third of the inheritance in usufruct, pursuant to § 763, the naked owner-

---

[1] The usufructuary share of the surviving spouse varies in each case, according to the heirs with whom said spouse concurs. Sections 761 to 766. These six Sections are found in the Third Book of the Civil Code, title III, chapter II, which deals with the testate succession; but § 761, as amended by Act No. 73 of March 9 of 1911 (Laws of 1911, p. 234), expressly prescribed that the provisions of said Section and the succeeding §§ 762 to 766, referring to the rights of the surviving spouse, shall be applicable to the testamentary as well as to the intestate succession.

ship of said portion being retained by the mother. Since this distribution would be the proper one under the law if in the present case there did not exist an adopted child, and it being expressly provided by § 132 that "Adoption shall in no case injure the rights belonging to forced heirs [who in the intestate succession are the same relatives mentioned in § 736 of the Civil Code [2]], which shall remain as though the adoption had not taken place," we reach the inescapable conclusion that the adopted daughter is not entitled to a share in the inheritance because such share would injure either the mother or the widow in their legal portions as heirs at law, it all depending on whether the share granted to the adopted child were taken from the legal portion of either one of the said two heirs.[3]

In 1910 in *Julbe* v. *Guzmán*, 16 P.R.R. 502, this court met a situation similar to the present case, regarding the rights of the surviving spouse in the intestate succession prior to the amendment introduced by the Act of 1911 to §§ 761 to 766. The facts were as follows:

On October 30, 1906, Victoria López Julbe died intestate at Humacao without leaving descendants. On December 3, 1908, Dolores Julbe, mother of the decedent, prayed the District Court of Humacao that she be declared sole and universal heir of her daughter. Julio D. Guzmán, the surviving spouse, sought and obtained leave to intervene, seeking to be declared heir of his wife in the usufructuary share which, as

---

[2] Section 736 provides:

"Forced heirs are:

"1. Legitimate children and descendants, with regard to their legitimate parents and ascendants;

"2. In the absence of the foregoing, the legitimate parents and ascendants, with regard to their legitimate children and descendants:

"3. The widower or widow, the natural children legally acknowledged, and the father or the mother of the latter in the manner and extent established in sections 761, 762, 763, 764, 767, 768, 769, 770, 771 and 772, of this Code."

[3] We do not mean that the collaterals or the People of Puerto Rico may injure the rights of the adopted child, because neither of them are considered forced heirs according to § 736, and therefore the adopted child may prejudice them.

widower, was apportioned to him by the Act of March 9, 1905. The district court rendered judgment declaring the mother and the widower, the latter in the usufructuary share, sole and universal heirs of the deceased. The mother appealed on the ground that there was no law granting a usufruct to the surviving spouse in the intestate succession when there were ascendants of the deceased spouse. The Act of 1905 recognized to this surviving spouse a portion in usufruct, in the intestate succession, only when there were brothers or sisters or children of the brothers or sisters of the deceased spouse. Similarly to the Spanish Civil Code, said Act was silent as to the widower's rights in the other cases of intestate succession. However, § 795 of the revised Civil Code then in force, included the widower among the forced heirs. Three of the judges of this court held that, since the law made no provision with respect to the portion in usufruct of the widower when there were ascendants of the deceased, the whole inheritance belonged to the mother, thereby reversing the judgment appealed from. The minority of the court, made up of Mr. Chief Justice Hernández and Mr. Justice Figueras, was of the opinion—invoking the practice recognized by the *Dirección General de los Registros* of Spain by the Order of June 14, 1897—that, since the widower was a forced heir, he should be granted the same right in the intestate succession that he would have in the testate succession if a will had existed.

In the case at bar we can not, even if we wanted, apply by analogy the doctrine of the dissenting opinion of Mr. Chief Justice Hernández and Mr. Justice Figueras, since the case of *Julbe* v. *Guzmán, supra,* may be easily distinguished from the present one. There the surviving spouse was, as in the present case, a forced heir unconditioned, while the adopted child, even though he is a forced heir, according to the opinion of Mr. Justice Snyder in *Sosa* v. *Sosa, supra,* he is such an heir subject to the condition contained in § 132, to the ef-

fect, that adoption shall in no case injure the rights belonging to forced heirs, which "shall remain as though the adoption had not taken place."

In our discussion of this case it has been argued that the status of forced heir can only exist in the testate succession and that, since the condition contained in § 132 of the Civil Code to the effect that adoption shall in no case injure the rights of the forced heirs, said condition is not applicable to the intestate succession where there are no forced heirs. We should not be confused by words. Let us delve into the substance and the legislative intent. The words "forced heirs," used in § 132, are descriptive of the nearest relatives of the adopter, the persons who with or without a will shall be the owners of the inheritance, subject of course to the order set by law for the distribution of the inheritance. The forced heirs are those relatives who in Roman law as well as in the Laws of the Partidas were called "proper heirs" (*suyos*). In the Partida VI, tit. 3, law, 21, it is stated: [4]

"The *proper heirs* are the children, grand children and great grand children of the testator . . . the ancient sages called them his proper heirs, because they are, in a manner, one person and the same thing with the testator himself; and because they were, moreover, said to be in some sort the owners of the estate. . . . they derive from their estates, whatever they stood in need of, in the same manner that their fathers or grandfathers themselves did; and again because the latter, at their death, could not disinherit them, without a certain and legal cause." [5]

This state of confusion which prevails in our law in regard to the adoption brings about the anomalous situation

[4] Translation from the Spanish by L. Moreau Lislet and Henry Carleton, Counsellors at Law, of Louisiana, vol. 2, p. 993.

[5] We admit that there are several theories with respect to the basis of intestate succession; but no matter what this basis might be, the result is always the same, inasmuch as the so-called forced heirs are the relatives who in the intestate succession, even though not called by that name but as legal heirs (*legitimarios*) or forced heirs, inherit from the deceased in preference to the collaterals. See the discussion on this matter in the *Instituciones de Derecho Civil Español*, by F. Clemente de Diego, vol. 3, pp. 272 *et seq.*

that if the adopting father makes a will he can not prevent the adopted child from sharing in his inheritance, of course, without injuring the rights of the other forced heirs; yet he may injure the rights of the adopted child simply by not making a will. We can not help this situation in view of the various provisions of the Civil Code relating to the intestate and testate succession. This anomalous situation calls for an immediate remedy, which remedy can be afforded solely by the Legislature.

For the foregoing reasons I agree with the result of the opinion rendered by Mr. Justice Todd, Jr., in which Mr. Chief Justice Travieso concurs.